M. S. GRINBAUM & CO. *vs.* HEEIA SUGAR PLANTATION COMPANY *et al.*

APPEAL FROM THE CHANCELLOR.

APRIL TERM, 1885.

JUDD, C. J.; McCULLY and AUSTIN, JJ.

The foreclosure of a mortgage on a sugar plantation decreed; and the mortgage held, by its terms, to cover advances made for carrying on the plantation.

DECISION OF THE FULL COURT.

UPON a careful examination of this case we are of the opinion that the decision of the Chancellor, dated March 12, 1885, should be sustained, and we adopt the same so far as the Macfarlane mortgage is concerned, but passing no opinion here on the Kennedy mortgage. On the first point passed upon by the Chancellor, as to Macfarlane's lien upon the original lease of the land of Heeia, we would likewise sustain his judgment thereupon, but this point was abandoned by plaintiff at the hearing.

The decree made below is affirmed.

*A. S. Hartwell,* for plaintiff.

*F. M. Hatch,* for Macfarlane & Co. and Alex. Kennedy.

Honolulu, May 23, 1885.

DECISION OF THE CHANCELLOR, APPEALED FROM.

(1) The bill sets forth that the plaintiffs, on the 16th August,

1883, took a mortgage from the Heeia Sugar Plantation Company, a corporation established under the laws of the State of California, upon all the property constituting the Heeia Sugar Plantation, to secure the repayment of $60,000 in three years, with interest semi-annually; and that $60,000 and more have been advanced by plaintiffs to carry on the plantation. (2) That the semi-annual interest ($2,600), due on the 16th February, 1884, has not been paid. (3) That said mortgage purported to be subject to the three following mortgages : First, from J. McKeague and Alexander Kennedy to H. Hackfeld & Co., dated September 30, 1879, and now by successive assignments held by C. M. Cooke, defendant; second, from J. McKeague and Alexander Kennedy to H. Macfarlane & Co., defendants, dated July 1, 1881; third, a mortgage from J. McKeague to Alexander Kennedy, dated September 24, 1881. (4) That plaintiffs are informed and believe that the last mortgage mentioned was collusive and fraudulent, etc. (5) That at the date of the execution of the mortgage to H. Macfarlane & Co., McKeague and Kennedy were partners, and plaintiffs cannot ascertain if there has ever been a legal dissolution of said partnership; that Kennedy's last place of abode in this island was at Heeia, but Mr. S. M. Damon is his attorney in fact. (6) That said mortgage from McKeague and Kennedy to H. Macfarlane & Co., was only to secure the debt due to H. Macfarlane & Co., and for money advanced by them. (7) That the said mortgage was, among other property, upon the lease of the Ahupuaa of Heeia from C. R. Bishop and wife to John McKeague, and by a subsequent agreement dated October 1, 1866, extended for the period of 13 years additional to October 1, 1894. That after the date of the mortgage to H. Macfarlane & Co., and before the date of mortgage to plaintiffs, the lease aforesaid was cancelled with the knowledge and consent of H. Macfarlane & Co., by a written agreement dated February 1, 1883, and recorded; that a new lease of the Ahupuaa of Heeia was executed to the Heeia Plantation Company, dated January 29, 1883, for the term of 22 years commencing October 1, 1882, and that thereby H. Macfarlane & Co. lost the security of said leasehold of the land of Heeia.

1. The bill prays, for an account of what is due plaintiffs, principal and interest, on their mortgage.

2. That in default of payment the Heeia Sugar Plantation Company may be foreclosed of their equity of redemption in the mortgaged premises.

3. That all said mortgages may be marshalled in the order of their priority and an account taken of what is due on each.

4. That the mortgage to Kennedy may be decreed to be fraudulent and void.

5. That H. Macfarlane & Co. have no lien or security upon the said lease of the Ahupuaa of Heeia.

6. That the said mortgage of H. Macfarlane & Co. is a valid security only to the extent of moneys advanced by H. Macfarlane & Co. to said John McKeague and Alexander Kennedy.

7. And for process and general relief.

The bill is dated July 3, 1884. On the 23d July, John McKeague, by his guardian T. A. Lloyd, was made a party defendant to this action, on the ground that by a decree of this Court in a former case McKeague is entitled to a certain equity in the property involved in this controversy.

The defendant C. M. Cooke submits to such order of the Court as may be made.

The defendant Kennedy says that he dissolved his copartnership with McKeague at the time of his sale to him of his interest in the plantation for $54,500, and that the mortgage in question was given him to secure part of the purchase money and was not intended as a fraud upon any one; that the Heeia Sugar Plantation Company purchased the premises from McKeague with full knowledge of respondent's mortgage, and assumed payment of same, and that plaintiffs had full knowledge of said mortgage before making any advances, and took their mortgage subject to respondent's mortgage, and plaintiffs have made payment of one note of $5,000, secured by said mortgage, and as to other matters they are either denied or respondent has no knowledge of them.

George W. Macfarlane and Henry R. Macfarlane, of the firm of G. W. Macfarlane & Co., make answer and say they are wrongly impleaded as H. Macfarlane & Co.; that they are ignorant of the matters set forth in the 1st and 2d allegations of the bill; and

that the mortgage made by McKeague and Kennedy to H. Mac-
farlane was by him assigned to G. W. Macfarlane & Co., on the
1st day of August, A. D. 1881; that the moneys advanced by
them, to secure which the mortgage was given, were made to
carry on the plantation of McKeague and Kennedy, and that ad-
vances were so made until Kennedy sold to McKeague and there-
after H. Macfarlane continued to make advances to McKeague
and acted as his agent until 1st August, 1881, when H. Macfarlane
transferred the agency and assigned the mortgage to G. W. Mac-
farlane & Co., of which firm H. Macfarlane was and is a partner;
and that G. W. Macfarlane & Co. continued to advance money
under the mortgage to McKeague to carry on the plantation until
the 30th June, 1882, on which day McKeague owed them $44,-
686.81, of which $40,000 is secured by the said mortgage and is
now due and owing with interest; that on the 1st July, 1882, the
plantation having passed into the possession of the Heeia Sugar
Plantation Company, a new account was opened with it and re-
spondents advanced money to the company to carry on the plan-
tation until ———————— 1883, when it amounted to $45,868 45,
over and above the amount of $40,000 secured by the mortgage,
and that this amount was paid to respondents by the said company
on the transfer of the agency to the plaintiffs. They admit that
their said mortgage includes the assignment of a lease by C. R.
Bishop and wife to McKeague and that afterward they made a
new lease to the Heeia Sugar Company, but they deny that the
first lease to McKeague has ever been cancelled or that they ever
consented to the cancellation thereof, and they say that the Heeia
Sugar Company had no power or authority to cancel the lease, etc.

The first question raised is whether the mortgage dated July 1,
1881, to H. Macfarlane & Co., covers and is secured upon the lease
of the Ahupuaa of Heeia. On the 1st October, 1869, the owners
of this land, Mrs. C. R. Bishop and her husband, had by an in-
strument in writing and recorded in book 29, folios 295 and 296,
extended to John McKeague the lease of Heeia for a term of
thirteen years from the 1st October, 1881. This lease would not
by its terms expire until October 1, 1894. Macfarlane's mortgage
recites this lease in the schedule of property mortgaged. But
after the Heeia Sugar Plantation Company of California had pur-

chased the plantation from McKeague a new lease was obtained by it for twenty-two years from the 1st October, 1882, at an increased rental. This lease is dated the 29th January, 1883.

It was admitted by counsel for respondents that this new lease is not within the Macfarlane mortgage. But it is contended that as Macfarlane paid the increased rent under the new lease, and as the cancellation of the lease covered by his mortgage is on record, he was bound by the notice thus acquired and it amounts to a consent and ratification of the whole transaction. The evidence shows that Macfarlane did not know of the cancellation of the old lease or the making of the new lease at the time they were executed, but heard of them afterward. I think that Macfarlane's payment of rent on the new lease is not to be taken as a consent that he should lose his security on the old lease. He paid this rent as agent of the plantation and as one of its ordinary disbursements, not as mortgagee in possession. The title of the lessee was in him by way of mortgage and he did not sign the agreement of cancellation which would be necessary to divest him of title. In the decree of foreclosure the Macfarlane mortgage is to be held to cover the old lease of 1866 and its renewal of the 1st October, 1869, but not the new lease of January 29, 1883.

The next point, and one of more difficulty, is whether the advances made by H. Macfarlane & Co. to John McKeague after Kennedy sold out, or to the Heeia Sugar Plantation Company after their purchase from McKeague, as well as advances made by G. W. Macfarlane & Co., subsequent to the transfer of the agency to that firm, are covered by the mortgage to H. Macfarlane & Co.

H. Macfarlane testifies that the account and agency of the plantation was on August 1, 1881, transferred to G. W. Macfarlane & Co., of which firm he became a member July 1, 1881; also that, though the date of the assignment of the mortgage appears to be "1st day of August, 1881," it was in fact executed on the 21st day of July, 1883, and the date in the instrument was changed to "1st day of August, 1881." This also appears by an inspection of the instrument. It was recorded after this suit was begun.

No question is made as to the assignability of the Macfarlane mortgage. It runs in the habendum clause to the mortgagee H.

50

Macfarlane "doing business as H. Macfarlane & Co., their heirs, executors, administrators and assigns."

It was not assigned until the 21st day of July, 1883, several days after the execution of the mortgage to Messrs. Grinbaum & Co., the plaintiffs.

This view is further sustained by an instrument dated 20th August, 1883, between Henry Macfarlane & Co. and the Heeia Sugar Plantation Company, by which Macfarlane releases the company, as grantee of the mortgagor McKeague, from certain obligations in the mortgage as to consigning the sugars to him and waives the breaches of condition thereby; extends the time of payment of the mortgage to 20th August, 1884, and covenants that no demand shall be made until that day; that previous breaches of covenant and condition are waived; that the company agreed to pay the amount of the mortgage debt fixed at $40,000 in one year from date. This instrument is signed and acknowledged by Henry Macfarlane of H. Macfarlane & Co., and indicates that at that late date H. Macfarlane, and not G. W. Macfarlane & Co., exercised ownership of this mortgage.

As regards advances made under it to McKeague after Kennedy sold out to the Heeia Sugar Plantation Company, I think that advances made to the original mortgagor and to his successors in the title are properly covered by the mortgage. The mortgagee might raise the question whether the mortgage not so stipulating, he was compelled to advance money to carry on a plantation after it was sold to parties in whom he had no confidence. But the money having been advanced to the grantee by the mortgagor and expended in carrying on the plantation, I think equity would not allow a subsequent mortgagee, taking his mortgage from the grantee of the original mortgagor, to question this, and in the face of the agreement of the 20th August, 1883, made, as I understand it, at the instance of Grinbaum & Co., who then assumed the agency of the plantation and paid Macfarlane the excess of the debt over $40,000, amounting to $15,868 45.

The validity under the statute of frauds of the parol assignment of the mortgage is not properly in question in this case. But a case decided in this Court some years ago (*H. Hackfeld & Co. vs. J. K. Akina*, in 1873, not reported) holds that the parol assign-

ment of a mortgage of real estate, accompanied by endorsement of mortgage note and delivery of mortgage deed, is not invalid by our statute of frauds, which omits an important section of the original act of Charles II.

The question is not whether G. W. Macfarlane & Co. can foreclose the mortgage for money advanced by H. Macfarlane; the subsequent assignment, dated July 21, 1883, would make the right clear. The real question is whether the mortgage is security for such advances as another firm, of which H. Macfarlane is also a member, succeeding to the agency, should make, and whether it can be questioned by a subsequent mortgagee with notice. The law cited by counsel for plaintiffs with respect to sureties does not, in my opinion, apply.

The strict rule which releases a surety upon a deviation from the contract does not apply here.

The money paid out by G. W. Macfarlane & Co. was paid out in pursuance of the mortgage for future advances, so I think that plaintiffs cannot now question it.

In Jones on Mortgages, Vol. I., Sec. 373, the author says: "If the mortgage contains enough to show a contract between the parties, that it is to stand as a security to the mortgagee for such indebtedness as may arise from the future dealings between the parties, it is sufficient to put a purchaser or incumbrancer upon inquiry, and if he fails to make it he is not entitled to protection as a *bona fide* purchaser." It cannot be said that Grinbaum & Co. did not know that G. W. Macfarlane & Co. had advanced the money. They paid this firm through the Heeia Company for the advances made over and above the sum secured by the mortgage, and as junior incumbrancers took their mortgage subject to the Macfarlane mortgage.

Jones, Sec. 376, says that "the agreement under which advances to a certain amount are to be made need not be in writing to be binding and effectual against subsequent liens." Sustained by New Jersey and Pennsylvania cases not accessible. But the agreement must be made contemporaneous, and no subsequent oral agreement can make a mortgage to secure future advances effectual in preference to a junior incumbrance. *Truscott vs. King*, 6 N. Y., 149, and *Hall vs. Crouse*, 13 Hun, 557. This last case

is authority that "parol evidence is admissible to show that the mortgage was given to secure future advances to be made by a party not named in the mortgage."

To apply these principles to the case at bar : The mortgage in question is certainly definite as to the amounts to be advanced and the time within which they are to be made, and the purpose is stated to be the furnishing and carrying on of the plantation, and it is unessential to a subsequent mortgagee whether the money be advanced by the original mortgagee or by a firm succeeding to the agency of which the original mortgagee is a member. Certainly neither the mortgagor nor his assigns could question it, and I fail to see how the subsequent mortgagee could have any greater equity. He took his mortgage with knowledge of the amount for which the prior mortgage was given, and it is no injury to him that the money was advanced by persons not parties to the original mortgage.

I know of no principle of law or equity upon which he can be allowed to take advantage of such a fact. He who seeks equity must do equity. In *Joslyn vs. Wyman*, 5 Allen, 92, it was held that "although a mortgage cannot, by oral agreement, be continued in force as security for a new indebtedness not embraced within the terms of its condition, yet if such an agreement has been made, and money has been advanced in consequence thereof by the mortgagee to the mortgagor, a court of equity will not aid the latter, or one who has taken a conveyance from him in a knowledge of the facts, in obtaining a release, or discharge the mortgage for the mortgagee." The Court say it would be contrary to equity to allow this, as it is in direct violation of his oral agreement. See also a similar case, *Stone vs. Lane*, 10 Allen, 74, and the Court here say that a court of equity will not assist any person to deprive the mortgagee of any security he would have against the mortgagor, unless the equitable right of such person is distinct from and superior to that of the mortgagor, citing 2 Story Eq. Jur., Sec. 1053, n. 3. See also *Crafts vs. Crafts*, 13 Gray, 360.

The case of *Taylor vs. Post*, 37 Hun, 449, is apparently opposed to this view. It decides that a mortgage to secure future advances is valid for that purpose only to the original firm which was mort-

gagee, and it could not by parol be made to cover or stand security for new indebtedness to a successor to the firm. But this was a bill of foreclosure by the mortgagee's administrator and does not affect the question whether a junior mortgagee can take this position.

I think that plaintiffs having full knowledge that a large proportion of the sums advanced under the H. Macfarlane & Co. mortgage was advanced by G. W. Macfarlane & Co., equity will not permit them to dispute the same.

As regards the Kennedy mortgage, it will be governed by the findings of fact and of law as made by me in the case of *McKeague vs. Kennedy, ante,* 347.

A decree of foreclosure in accordance with law and the principles here enunciated will be signed on presentation, and a reference is hereby ordered to a master to ascertain the amounts due on the several mortgages.

*A. S. Hartwell* and *W. R. Austin*, for plaintiffs.

*F. M. Hatch*, for defendants Kennedy and Macfarlane.

*W. R. Castle*, for Cooke.

Honolulu, March 12, 1885.